## Case No. 6,542.

In re HITCHINGS.

[4 N. B. R. 384 (Quarto, 125).][2]

District Court, E. D. Pennsylvania. Dec. 28, 1870.

BANKRUPTCY—SALE BY MARSHAL AS MESSENGER—FIXTURES—RIGHTS OF PURCHASER.

1. A sale by the marshal as messenger, under a special order of the court, prior to the appointment of an assignee, is to be considered as in the nature of a sale made by a provisional assignee.

2. In a sale so made of the lease, good-will, and fixtures of a grocery store, only such things (or their accessories) as are actually or constructively fastened to the freehold, will pass to the purchaser of fixtures.

3. A purchaser of the fixtures at such a sale may make claim upon the funds in the hands of the assignee for the sale, by the messenger, of such articles as were properly included under the sale of the fixtures and afterwards resold as movables.

[Cited in Giveen v. Smith, Case No. 5,467.]

At an adjourned third general meeting of creditors, held in said matter, on the 18th day of October, A. D. 1870, before Joseph Mason, register in bankruptcy, a claim of C. C. Selden was presented for proceeds of sale of certain articles sold by the marshal as messenger, and which said claimant alleged had been previously sold to him as part of the lease, good-will and fixtures of a certain store formerly in the occupation of the bankrupt.

The principal testimony taken in relation to said claim was as follows:

Conner C. Selden, the claimant, being duly sworn, was examined by George S. Selden, Esq., his counsel, as follows: "I was the pur-

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

[2] [Reprinted by permission.]

chaser of the lease, good-will and fixtures at the marshal's sale of Mr. Hitchings' property, which were the first things sold at the sale. I complied with the terms of sale, and paid fifty dollars cash at the time of sale, and the balance immediately after the confirmation of the sale. After the sale of the lease, good-will and fixtures, the marshal proceeded to sell the groceries and the articles set forth in the annexed schedule (being six tea-caddies, for seven dollars and fifty cents; one desk, seventy-five cents; refrigerator, four dollars; platform scales, twelve dollars and fifty cents; stove, three dollars; show-case, four dollars and twenty-five cents; fire-proof safe, twelve dollars and fifty cents; meat scales, three dollars and seventy-five cents; marble slab, three dollars; two molasses cans, fifteen dollars; lot of measures and funnels, sixty-two cents; cheese cover, one dollar and twenty cents; two cider barrels, seven dollars and fifty cents; tin cans, fifty-five cents; awning, twenty-nine dollars; awning frame, thirty-six dollars; three coffee bins, ten dollars and fifty cents; one meat saw, two dollars; meat knife, steel, and cheese knife, two dollars and fifty cents; measures, three dollars; cigar case, one dollar and seventy cents. A gas bill of thirty-nine dollars was also claimed to have been paid by the claimant). Against the sale of the articles in this schedule I protested, and they were afterwards sold. I think, at or about the prices named in said paper. I claimed that I had purchased all these articles when I purchased the lease, good-will, and fixtures. I claimed that they were included under the sale of the lease, good-will, and fixtures. It cost me considerable more than these articles sold for, to replace them. Q. Do you know whether Mr. Hitchings, the bankrupt, had bought these articles as a part of the lease, good-will, and fixtures from Mr. Cuyler, who had kept the store there previously? (Objected to by Wm. B. Robins, Esq., assignee.) A. I know from Mr. Cuyler, who told me that these articles had been sold by him to Mr. Hitchings in the sale of the lease, good-will, and fixtures."

Examined by Mr. Robins: "I made no exception to the return of the sale, except that I had protested at the time of the sale. I thought that the only thing that needed confirmation was the sale of the lease. I did not appear at the first meeting of creditors to make my claim. I didn't know of the time of any meeting of creditors."

By the Register: "On the day of the confirmation of the sale I settled with the marshal. I paid the balance of my bid for the lease, good-will, and fixtures immediately after the confirmation of the sale. I don't know whether I made any claim of set-off, or any objection to the payment of the amount bid, on account of the sale of the articles mentioned at the time of my settlement with the marshal. I gave the claim to my father, who is my counsel, seven or eight months before the present time."

William B. Robins being duly sworn, was examined by Mr. Selden, as follows: "I was present during part of the sale of Mr. Hitchings' property. I heard you publicly protest against the sale of certain articles, all except groceries, on the ground that your son had bought them, when he bought the lease, good-will, and fixtures. Shortly after I was appointed assignee you informed me that you intended to make a claim for the proceeds of certain articles, against the sale of which you had protested. You told me that you thought you could follow the fund, and didn't want to get in any controversy with the marshal."

By the Register: "I informed Mr. George S. Selden of this meeting of creditors, but not of the second meeting of creditors."

Samuel I. Wright, being duly sworn, was examined by Mr. Robins: "I was deputy United States marshal on the 29th of June, 1869, when I sold the property of Richard Hitchings, a bankrupt, under a special order of the court. I was specially deputized to sell this property. I sold the lease, good-will, and fixtures to C. C. Selden for one hundred and sixty-five dollars. I think the unexpired term of the lease, good-will, and fixtures were sold prior to the stock of groceries, etc. I offered for sale the unexpired term of the lease of the store, and the good-will and fixtures. The question was asked, I think, by the landlord, Who was to pay the back rent? It is my impression that I told him it would come out of the fund. I think it was also asked whether the gas bill would be paid? These announcements were made publicly. I stated generally that I supposed the back rent and the gas bill would be paid, I think all present at the sale heard these statements. I don't think there was anything said by me, when making the sale, as to what would be embraced by the fixtures. I simply offered for sale the unexpired term of the lease, good-will, and fixtures, and asked for bids thereon. Before that offer I had offered the stock, good-will, fixtures, lease, and everything together, upon which I got no satisfactory bid, none as high as the appraisement. I then offered for sale the unexpired term of lease, good-will, and fixtures as before stated. When I afterwards offered for sale the scales, marble meat slab, and several other articles, Mr. C. C. Selden objected. He claimed that he had bought those as part of the fixtures; I said I didn't understand it that way.—that I didn't understand I was selling those as part of the fixtures; he replied that he claimed them as part of his purchase, when he purchased the fixtures; he bought some of the articles, to the sale of which he had objected; he bought the scales, I cannot tell what else; he had paid me no deposit on the lease, good-will, and fixtures, when he protested against the sale

of the articles referred to; he didn't pay anything until the sale was concluded; he had an opportunity to withdraw his bid; he paid me fifty dollars at the close of the sale; I don't remember of his making any objection then; he didn't settle finally with me at the marshal's office. None of the articles mentioned in the paper produced were mechanically fastened or affixed in any way to the building, except the awning frame; with that exception they were all readily movable; the marble slab, I think, was fitted to the counter."

Cross-examined: "That (bill produced) is one of the hand-bills of the sale. I have an impression that I said something about withdrawing his bid, but I cannot say for certain."

William B. Robins re-examined: "I was present when the sale of the meat slab and several other articles was objected to; I heard nothing said about the bidder for the fixtures having the right to withdraw his bid."

By J. MASON, Register:
Upon consideration of the foregoing testimony, I am of opinion, that the sale by the marshal, as messenger under the order of the court, is to be regarded as in the nature of a sale made by a provisional assignee, and that the claimant is entitled to be paid out of the fund in the hands of the assignee, the sums for which the following articles were sold, viz:

Awning frame .................... $36 00
Awning as accessary thereto.......... 29 00
Marble meat slab, fitted to a counter.. 3 00

Total ........................ $68 00

—And that those are the only articles which could properly be designated fixtures and pass to the purchaser of fixtures, and that the amount of the gas bill paid by said claimant for gas furnished prior to said sale, should be refunded by the assignee.
November 11, 1870.

The assignee made the following exceptions to the report of the register:
First. Because he has decided that any of the articles sold at the marshal's sale as fixtures, were afterwards sold by the marshal.
Second. Because the register has awarded any sum of money from balance in assignee's hands to Conner C. Selden.
Exceptions were also made by the claimant, but none appear to have been filed of record.
After argument, it was ordered by THE COURT (CADWALADER, District Judge) that the exceptions of the assignee and of Conner C. Selden, to the report of the register in said matter, as to the claim of said Conner C. Selden to the proceeds of certain articles sold by the marshal as messenger under an order of the court, be overruled, and the report confirmed, and the assignee be directed to carry it into effect.